UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA MARIE GOERSS,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, et al.,<br><br>    Defendants. | Case No. 21-cv-04485-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 19 |

Plaintiff Christina Marie Goerss, proceeding pro se, has filed an employment discrimination suit against Pacific Gas & Electric Co. ("PG&E") and several of its employees (Daniel Campbell, Ryan Harriman, Donnie Humphreys, Paula Jean, and Roberta Pena). Currently pending before the Court is Defendants' motion to dismiss based on the statute of limitations. According to Defendants, Ms. Goerss's suit is time barred because she failed to file it within 90 days after receiving her Right to Sue letter from the EEOC. Having considered the parties' briefs and accompanying submissions, as well as their oral argument, the Court hereby **GRANTS** the motion to dismiss which it construes here as a motion for summary judgment. To the extent Ms. Goerss has filed a motion for "sanctions," it is **DENIED** as moot.

### I.    FACTUAL & PROCEDURAL BACKGROUND

A.    FAC

In the operative first amended complaint ("FAC"), Ms. Goerss alleges as follows.

Ms. Goerss has worked for PG&E since May 2003. Her "last held position was Gas Service Representative (GSR)." FAC ¶ 1. Her immediate supervisors during the relevant time were Mr. Harriman and Mr. Campbell. *See* FAC ¶ 1. In turn, "[t]heir immediate supervisor was

[Mr.] Humphrey, Customer Field Service Manager." FAC ¶ 1.

In October 2018, Ms. Goerss had a panic attack at work. Mr. Harriman was the supervisor there that day. Ms. Goerss explained to him that her panic attack was due to her disability – *i.e.*, PTSD. *See* FAC ¶¶ 2-3. Although not entirely clear, it appears that Ms. Goerss asked for accommodation because of her disability. *See* FAC ¶ 3. Ms. Goerss explained to Mr. Harriman that her disability made her "hyper vigilant," such that she needed "'open and honest communication'" and "autonomy" to be able to manage her stress and workload. FAC ¶¶ 6-7. Mr. Harriman, however, exacerbated matters by micromanaging, constantly interfering, and gossiping about her. *See* FAC ¶¶ 4, 6.

Several months later, in January 2019, Ms. Goerss met with her other supervisor, Mr. Campbell. Ms. Goerss told Mr. Campbell about her PTSD and asked him to intervene with respect to Mr. Harriman. "Mr. Campbell excused Mr. Harriman's behavior as a 'personality conflict.'" FAC ¶ 9.

Soon thereafter, in February 2019, Mr. Campbell brought Ms. Goerss into a "'Coaching and Counseling' session," which is used as a first step in the disciplinary process. FAC ¶ 10.

Sometime in March 2019, Ms. Goerss suffered a psychiatric injury. *See* FAC ¶ 12. (Ms. Goerss seems to attribute her psychiatric breakdown to Mr. Harriman's harassing conduct and Mr. Campbell's failure to address that conduct and initiation of disciplinary proceedings against her. *See* FAC ¶¶ 12-13.) Ms. Goerss sought worker's compensation for the injury. *See* FAC ¶ 20. While Ms. Goerss was out on FMLA, Mr. Campbell called her and threatened her "with a 'Fit for Duty.' He also threatened to 'pull [her] file' and 'suggested [she] 'change [her] shift' or 'just get another job.'" FAC ¶ 25.

More than a year later, in June 2020, Ms. Goerss was told that she "was 'leaving the company' per '[Mr.] Humphrey.'" FAC ¶ 11. The next day, an Office Clerk (Sandra Mendoza) "threaten[ed] a 'Code of Conduct' by 'Corporate Security' if [she] didn't 'turn over [her] company assets.'" FAC ¶ 11.

Ms. Goerss has included Ms. Jean and Ms. Pena as defendants based on their failure to address the problems she encountered. *See* FAC ¶ 15 (alleging that Ms. Jean is "a representative

2

of Compliance and Ethics and is under obligation [to] investigate and address allegations of discrimination, harassment, hostile work environment and retaliation"; adding that Ms. Jean "ignored this responsibility" and further "stonewalled the process and refused to address my requests for a proper investigation"); FAC ¶ 16 (alleging that Ms. Pena is "a representative of Integrated Disability [Management] Services [and] is under obligation to investigate and resolve my claim of injury"; adding that Ms. Pena ignored documentation submitted "to prove the occupational injury" and "refused to perform a proper investigation or consult with my attending clinician"); *see also* Docket No. 36 (Mot. at 4-7) (in Ms. Goerss's motion for sanctions, asserting failures on the part of Ms. Jean and Ms. Pena in April-August 2020).

Based on, *inter alia*, the above allegations, Ms. Goerss has asserted the following claims for relief:

(1) Violation of Title VII.

(2) Violation of the ADA, 42 U.S.C. § 12112 (providing that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment").

(3) Violation of the ADA, 42 U.S.C. § 12132 (providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity").

(4) Violation of the ADA, 42 U.S.C. § 12203(a) (providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter").

B.  Administrative Exhaustion

Ms. Goerss initiated the instant action on June 7, 2021.  *See* Docket No. 1 (Compl. at 3).

She filed the operative FAC on July 22, 2021, before any defendant made an appearance in the case.

Based on documents that the parties have submitted in conjunction with their briefs, it appears that, prior to filing the federal suit, Ms. Goerss engaged in the following conduct related to exhaustion of administrative remedies.[1]

On October 14, 2019, Ms. Goerss sent an email to the EEOC, asking about scheduling an intake interview for her charge of sexual harassment, discrimination, and retaliation against PG&E. *See* Opp'n, Ex. A (email) (ECF Page 15).

It appears that the EEOC subsequently interviewed her on October 22, 2019. *See* Docket No. 36-1 (Goerss Decl. ¶ 2). Thereafter, on November 9, 2019, Ms. Goerss emailed the EEOC again because she was not happy with how the interview had been conducted. *See* Opp'n, Ex. B (email) (ECF Page 35); Docket No. 36-1 (Goerss Decl. ¶ 3). The EEOC responded several days later, essentially asking her to recontact the EEOC representative with whom she had been working. *See* Opp'n, Ex. C (email) (ECF Page 38).

More emails were exchanged between Ms. Goerss and the EEOC in late December and early January 2020. *See* Opp'n, Exs. E-G (ECF Pages 45, 47, 49). Ms. Goerss continued to be dissatisfied with the EEOC. *See, e.g.*, Docket No. 36-1 (Goerss Decl. ¶¶ 6-11).

Apparently, at or about this time, Ms. Goerss was also in communication with the DFEH. *See* Opp'n, Ex. G (email) (noting communication with DFEH which then "looped me back to the EEOC"). On or about January 8, 2020, the DFEH sent a Right to Sue letter to Ms. Goerss. *See* FAC, Ex. 1 (DFEH Right to Sue letter). In the letter, the DFEH stated that the complaint she filed with the agency had been closed "effective January 8, 2020 because an immediate Right to Sue notice was requested." DFEH further noted:

> This letter is also your Right to Sue notice. According to

---

[1] By submitting documents, the parties have essentially converted the 12(b)(6) motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). At the hearing, the Court allowed both parties to provide supplemental evidence regarding the time-bar issue.

> Government Code section 12965, subdivision (b), a civil action may be brought *under the provisions of the Fair Employment and Housing Act* [*i.e.*, state law] against the person, employer, labor organization or employment agency named in the above-referenced complaint.  The civil action must be filed within one year from the date of this letter.

FAC, Ex. 1.  Finally, DFEH stated that, "[t]o obtain a *federal* Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier."  FAC, Ex. 1 (emphasis added).

On January 24, 2020, Ms. Goerss sent another email to the EEOC, stating that she was still waiting for a response from the agency.  She attached to her email the Right to Sue letter she had received from the DFEH.  *See* Opp'n, Ex. I (Page 54).

On the same day, January 24, 2020, the EEOC responded.  It informed her that, "when a Charging Party goes to the DFEH and requests or otherwise receives a Notice of Right to Sue, the most that the EEOC can do at that point is to issue a companion Federal Notice of Right to Sue.  This is because you are only entitled to one investigation by a Fair Employment Practice Agency."  Opp'n, Ex. J (email) (ECF Page 57).  The EEOC added that it was interpreting Ms. Goerss's email as a request to receive a federal Right to Sue letter.  In a subsequent email also dated January 24, Ms. Goerss confirmed that she was requesting such a letter.  *See* Opp'n, Ex. K (email) (ECF Page 59).

On January 28, 2020, Ms. Goerss received the Right to Sue letter from the EEOC.  This is expressly alleged in the FAC.  *See* FAC at 6.  Although she did not provide a copy of the letter in conjunction with her FAC, she submitted a copy of the letter as an attachment to her opposition brief.  *See* Opp'n, Ex. 11 (Right to Sue letter from EEOC).  It is clear that the letter attached to the opposition brief is the January 28 Right to Sue letter referred to in the FAC because, in her "Evidence Table of Contents" (also an attachment to her opposition brief), Ms. Goerss expressly identifies the letter as the one she "[r]equested January 24, 2020."  Opp'n, "Evidence Table of Contents" (ECF Page 60).  The January 28 Right to Sue letter clearly states that "[t]his is your Notice of Right to Sue, issued under Title VII, the ADA or GINA" and that

> [i]t has been issued at your request.  Your lawsuit *under Title VII,*

> *the ADA or GINA* **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (*The time limit for filing suit based on a claim under state law may be different.*)

Opp'n, Ex. 11 (ECF Page 133) (bold in original; italics added).

According to Defendants, they are not aware of any Right to Sue letter from the EEOC from around the date of January 28, 2020. *See* Mot. at 3. However, Defendants ask the Court to take judicial notice of a Right to Sue letter issued by the EEOC to Ms. Goerss, which PG&E received on or about April 2, 2020 (as indicated on a postmark on the EEOC envelope). Because only limited facts are judicially noticeable, *see* Fed. R. Evid. 201, the Court directed Defendants to provide evidence instead (such as a declaration) confirming that the letter was sent to PG&E on that date. Defendants have provided that declaration. *See* Docket No. 34 (Donat Decl.). As above, the Right to Sue letter expressly informs Ms. Goerss that she has only ninety (90) days from receipt to file a federal claim.

According to Defendants, whether the EEOC issued a Right to Sue letter on January 28, 2020 (as Ms. Goerss indicated in both her FAC and opposition) or on April 2, 2020 (as indicated by Defendants' evidence), Ms. Goerss's claims under Title VII and the ADA are untimely. As noted above, Ms. Goerss did not initiate the instant action until June 7, 2021.

Notably, in the original complaint filed on June 7, 2021, Ms. Goerss indicated that she was aware of a statute-of-limitations problem:

> As I read[] 'Civil Practice and Procedure: Tolling of Statutes of Limitations in Response to COVID-19 Pandemic,' it appears that the statutes have been tolled for six months to protect parties who have a civil cause of action that accrued before or during the COVID-19 pandemic[]. I am hoping that means that the new date for limitation would be June 8, 2021, which I am trying to honor in this circumstance with a mailing date of June 4, 2021."

Compl. at 11. Ms. Goerss appears to be referring to Emergency Rule 9, which was issued by the California Judicial Council (and not by any federal court or body). Rule 9(a) provides that, "[n]otwithstanding any other law, the statutes of limitation and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." Rule 9(b) provides that, "[n]otwithstanding any other law, the statutes of limitations and repose for civil causes of action that are 180 days or less are tolled from April 6, 2020, until August 3, 2020." (Emergency

6

1   Rule 9 and other Emergency Rules related to COVID-19 are available at

2   https://www.courts.ca.gov/documents/appendix-i.pdf (last visited 9/8/2021).)

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

In the instant case, Defendants have essentially raised a statute-of-limitations argument in support of dismissal. Whether a claim is time barred is an affirmative defense, and a plaintiff ordinarily "need not 'plead on the subject of an anticipated affirmative defense [in the complaint].' [However,] [w]hen an affirmative defense is obvious on the face of a complaint," and/or from judicially noticeable documents, "a defendant can raise that defense in a motion to dismiss." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, at 902 (9th Cir. 2013); *see also Powell v. Wells Fargo Home Mortg.*, No. 14-cv-04248-MEJ, 2015 U.S. Dist. LEXIS 104052, at *22 (N.D. Cal. Aug. 7, 2015) (stating that "'[a] defendant is permitted to raise a statute of limitations argument in a 12(b)(6) motion provided the basis for the argument appears on the face of the complaint and any materials the court is permitted to take judicial notice of'").

As indicated above, Defendants initially presented a 12(b)(6) motion to the Court; however, both parties essentially converted the 12(b)(6) motion into a motion for summary judgment by presenting evidence for the Court to consider. *See* note 1, *supra*. The Court thus applies the summary judgment standard. Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

7

56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where a defendant moves for summary judgment based on an affirmative defense (*i.e.*, an issue on which it bears the burden of proof), the defendant must establish "all of the essential elements of the . . . defense to warrant judgment in [its] favor." *Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (internal quotation marks omitted; emphasis omitted); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (noting that a defendant bears the burden of proof at summary judgment with respect to an affirmative defense).

B.     Time Bar

As reflected in the FAC, Ms. Goerss has brought Title VII and ADA claims related to her employment with PG&E. The Title VII and ADA claims are subject to the same procedural requirements. *See* 42 U.S.C. § 12117(a) (adopting the Title VII procedures for ADA Title I claims (which relate to disability discrimination in employment)); *id.* § 12203(c) (adopting the procedures in § 12117 for ADA retaliation claims).[2] Those requirements include administrative exhaustion and the timely filing of suit. *See Dezham v. Macy's W. Stores, Inc.*, No. SACV 13-1864-DOC (RNBx), 2015 U.S. Dist. LEXIS 73, at *19 (C.D. Cal. Jan. 2, 2015). Specifically,

> upon dismissing a charge of discrimination [made with the agency], the EEOC must notify the claimant and inform her that she has ninety days to bring a civil action. *See* 42 U.S.C. § 2000e-5(f)(1) ("If a charge filed with the [EEOC] . . . is dismissed by the [EEOC],

---

[2] Technically, Ms. Goerss pled an ADA Title II claim in addition to her Title I claim; however, the Title II claim has no merit because the Ninth Circuit has expressly held that it does not cover employment. *See Zimmerman v. Oregon DOJ*, 170 F.3d 1169 (9th Cir. 1999) (holding that Title II of the ADA does not apply to employment); *see also Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1074 n.2 (9th Cir. 2010) (noting that, in *Zimmerman*, "[t]his court reasoned that the text of Title II clearly concerns itself not with 'inputs' of public agencies, such as employment, but with 'outputs,' including a public agency's 'services, programs, [and] activities'").

> . . . the [EEOC or otherwise appropriate entity] shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought."). . . . [T]his ninety-day period operates as a limitations period. *See Scholar v. Pac. Bell*, 963 F.2d 264, 266-67 (9th Cir. 1992). If a litigant does not file suit within ninety days "[of] the date EEOC dismisses a claim," then the action is time-barred. *Id.*

*Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121 (9th Cir. 2007).

In the instant case, there is no dispute that Ms. Goerss was required to exhaust her Title VII and ADA claims related to her employment. There is also no dispute that Ms. Goerss did not timely file her federal suit after the EEOC gave her notice of her right to sue. Even if Ms. Goerss did not receive the Right to Sue letter from the EEOC until April 2020,[3] that meant she only had until July 2020 to file her federal suit. Instead, Ms. Goerss did not initiate this action until July 2021.

Given this situation, Ms. Goerss has invoked equitable tolling. *See Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir. 1986) (stating that "the 90-day filing period is a statute of limitations subject to equitable tolling"). As an initial matter, the Court notes that Ms. Goerss has the burden of proving equitable tolling. *See generally Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) ("[L]ong-settled equitable-tolling principles instruct that [g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.") (internal quotation marks omitted)). In addition, the Ninth Circuit has noted that equitable tolling is available only "in extreme cases." *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992).

> The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was clearly inadequate. Courts have been generally unforgiving, however, when a late filing is due to claimant's failure

---

[3] Using the April 2020 date would be giving Ms. Goerss the extreme benefit of the doubt. Ms. Goerss's own papers clearly establish that she received the Right to Sue letter on January 28, 2020.

9

"to exercise due diligence in preserving his legal rights."

*Id.* "Equitable tolling 'focuses on whether there was excusable delay by the plaintiff.' A pro se plaintiff's failure to act diligently is not a reason to invoke equitable tolling." *Guevara v. Marriott Hotel Servs.*, No. C 10-5347 SBA, 2013 U.S. Dist. LEXIS 38847, at *16-17 (N.D. Cal. Mar. 20, 2013).

In the instant case, Ms. Goerss's attempt to get around the time bar through equitable tolling falls short. For example, Ms. Goerss cannot rely on the California-issued emergency rule referenced above to get relief because she is not in state court. In addition, although she theoretically could argue that COVID-19 was still an impediment to her, she would have to explain how the pandemic could justify her not filing until July 2021. She has not done so. Indeed, as indicated above, Ms. Goerss must show that she has acted with due diligence, and conditions in the Bay Area had certainly improved by the spring of 2021.

Ms. Goerss has asserted that she is entitled to equitable tolling because of misleading conduct by the EEOC. To the extent Ms. Goerss asserts that, prior to the issuance of the Right to Sue Letter, the EEOC failed to properly assess her complaint or to investigate, that conduct is, in effect, irrelevant because the issue here is whether the EEOC misled Ms. Goerss regarding the deadline she had to file a lawsuit *after* the issuance of a Right to Sue letter.

Ms. Goerss also suggests that the EEOC's Right to Sue letter itself was misleading because it did not seem "official," as it was neither signed nor dated. *See* Docket No. 36-1 (Goerss Decl. ¶ 11) (stating that "I could not even conceive of how such an incomplete document could be considered viable in federal court"). But 29 C.F.R. § 1601.28(e) does not specify that a Right to Sue letter must include, as part of its contents, a signature and/or date. More important, Ms. Goerss can hardly challenge the lack of a signature and date on the Right to Sue letter when (1) the circumstances make clear that she received the letter from the EEOC (*i.e.*, she asked the agency for a Right to Sue letter on January 24, 2020, and received it on January 28) and when (2) she has admitted that she received the letter on January 28. At the very least, Ms. Goerss should have, in due diligence, followed up with the EEOC if she believed that there was a problem with the letter, which she apparently did not do.

Ms. Goerss protests still that, before the issuance of the Right to Sue letter, the EEOC "made no distinctions regarding the time-barring of a state claim v. a federal claim," referred to the federal Right to Sue letter as a "companion" to the DFEH Right to Sue letter, and "stated that I was 'only entitled to *one* investigation by a Fair Employment Agency,'" such that she was left with "the distinct impression . . . that *either* document would work in my case and that the Right to Sue letter issued by the EEOC was not only redundant but was, in fact, ineffectual." Docket No. 36-1 (Goerss Decl. ¶ 11) (emphasis in original). In short, Ms. Goerss takes the position that she understood the DFEH Right to Sue letter to be the "controlling" document. The Court is not persuaded. First, this conduct identified by Ms. Goerss all took place before the EEOC Right to Sue letter issued. Second, the letter expressly noted for Ms. Goerss's benefit that there could be a different for timing for her federal claim as opposed to any state claim and expressly addressed her federal claims. *See* FAC, Ex. 1 (Right to Sue Letter) ("Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)") (emphasis in original). Third, Ms. Goerss's argument makes little sense because if the federal Right to Sue letter was redundant, then the EEOC would not have issued one at all.[4] Even accepting Ms. Goerss's position that this was her understanding, her understanding was not reasonable and does not provide a cognizable basis for equitable tolling.

Finally, Ms. Goerss contends that PG&E itself and its employees (in particular, Ms. Jean and Ms. Pena) engaged in misconduct after she had initiated contact with the EEOC. *See* Docket No. 36-1 (Goerss Decl. ¶¶ 13-14) (asserting that Ms. Jean and Ms. Pena, as Human Resources

---

[4] In her declaration, Ms. Goerss also alludes to being given wrong or incomplete advice by attorneys. *See, e.g.*, Docket No. 36-1 (Goerss Decl. ¶ 11) ("Using the DFEH letter as my plumb line, as it appeared to be (in the absence of true guidance) the only document that would hold up in court. Mr. Zach Zwerdling, one of the first private attorneys that I queried, asserted that I had 'plenty of time' on February 13, 2020. He made this assertion after examining the DFEH letter I provided him."); Docket No. 36-1 (Goerss Decl. ¶ 12) ("All of the lawyers I spoke with stated that I was on a time clock, but not one of them quantified the clock or delineated between a state and federal claim and the differences between the two; relative to a time-bar."). But the Supreme Court has held that "attorney negligence is not an extraordinary circumstance warranting equitable tolling." *See Holland v. Fla.*, 560 U.S. 631, 655 (2010).

11

1  experts, "had a *clear* understanding of the timeline I would be held to and did everything they

2  could do to run the clock[,] ignoring their fiduciary duty to 'self-report' under the requirements of the

3  company's federal probation"[5]) (emphasis in original).  But even if Ms. Jean and Ms. Pena failed

4  to act on her complaints or to self-report the fact of her claims to, *e.g.*, a federal monitor, Ms.

5  Goerss has not shown how those failures can support an equitable tolling theory.  She has not

6  pointed to any action or omission by PG&E and its employees that misinformed her or misled her

7  about the time she had to file her federal claim.  Self-reporting would not be a substitute for Ms.

8  Goerss filing a lawsuit raising her federal claim.

9  C.  Plaintiff's Motion for Sanctions

10  As part of her supplemental filing permitted by the Court, Ms. Goerss filed a motion for

11  sanctions.  In the motion, Ms. Goerss contends that the Court cut her off and/or otherwise

---

[5] By "federal probation," Ms. Goerss seems to be referring to a criminal proceeding involving PG&E (*United States v. Pac. Gas & Elec. Co.*, No. CR-14-0175 WHA (N.D. Cal.)).  During that litigation, Judge Henderson issued an order imposing a monitorship, the goal of which was

> to prevent the criminal conduct with respect to gas pipeline transmission safety that gave rise to the Superseding Indictment filed in this matter.  To that end, and as more directly detailed in Sections I.B. and I.C. below, the Monitor's goal is to help ensure Pacific Gas and Electric Company ("PG&E") takes reasonable and appropriate steps to maintain the safety of the gas transmission pipeline system, performs appropriate assessment testing on gas transmission pipelines, and maintains an effective ethics and compliance program and safety related incentive program.

*United States v. Pac. Gas & Elec. Co.*, No. CR-14-0175 WHA (Docket No. 916) (Order at 1).  In the final judgment, Judge Henderson also imposed the following as a special condition of supervision:

> PG&E shall notify the probation officer and monitor immediately upon learning of (A) any material adverse change in its business or financial condition or prospects, or (B) the commencement of any bankruptcy proceeding, major civil litigation, criminal prosecution, or administrative proceeding against the organization, or any investigation or formal inquiry by governmental authorities regarding the organization.

*United States v. Pac. Gas & Elec. Co.*, No. CR-14-0175 WHA (Docket No. 922) (judgment, including special conditions).  Ms. Goerss seems to suggest that PG&E had a duty to "self-report" the claims she was bringing against the company to the monitor and/or the probation office.  *See* Opp'n at 2; Docket No. 36 (Mot. at 4) (in motion for sanction, referring to communications with monitor).

12

prevented her from presenting her arguments, which constituted a violation of the Codes of Conduct for U.S. Judges, *see, e.g.*, Canons 3(A)(3)-(5), as well as a violation of 18 U.S.C. § 1001.[6] Ms. Goerss also argues that the same conduct by the Court denied her reasonable accommodation for her PTSD.

Although the Court does not agree with Ms. Goerss's contentions (a transcript of the hearing is available at Docket No. 33), her motion is essentially moot because the Court gave Ms. Goerss an opportunity make a supplemental filing and, as she admits in her supplemental filing, she includes in the filing the arguments she was purportedly not allowed to make. *See, e.g.*, Docket No. 36 (Mot. at 3) (in motion for sanctions, stating that "[t]he following is my argument for fraud demonstrated by my employer and the reason for equitable tolling, that the court denied me access to on October 7, 2021"); Docket No. 36-1 (Goerss Decl. ¶¶ 13-14). The Court has considered Ms. Goerss's arguments and rejects them on their merits.

### III.   CONCLUSION

For the foregoing reasons, there is no genuine dispute that Ms. Goerss's action is time barred. She received a Right to Sue letter from the EEOC on January 28, 2020, but did not file this action until June 7, 2021. Even if the Court were to give Ms. Goerss the benefit of the April 2020 date (*i.e.*, when PG&E received a copy of the Right to Sue letter), she would still be time barred. In addition, there is no genuine dispute that there is no basis for equitable tolling.

///
///
///
///
///
///

---

[6] Title 18 US.C. § 1001 is a criminal statute that has no application to the instant case. *See* 18 U.S.C. § 1001 (providing that "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully – (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact," etc. "shall be fined under this title, imprisoned not more than 5 years," etc.).

Accordingly, the Court hereby grants Defendants' motion for summary judgment. The Clerk of the Court is ordered to enter a final judgment in accordance with this opinion and close the file in the case.

This order disposes of Docket Nos. 19 and 36.

**IT IS SO ORDERED**.

Dated: October 18, 2021

_____
EDWARD M. CHEN
United States District Judge